b

# EXHIBIT B

John P. Sheridan, Bar No.028891998
MARRINAN & MAZZOLA MARDON, P.C.
26 Broadway, 17th Floor
New York, NY 10004
Tel: (212) 425-3240
jsheridan@mmmpc.com
*Attorneys for Plaintiff*

Michael Critchley, Bar No. 251821972
CRITCHLEY, KINUM & LURIA, LLC
75 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 422-9200
mcritchley@critchleylaw.com
*Attorneys for Plaintiff*

| | |
|---|---|
| INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,<br><br>*Plaintiff*,<br>v.<br><br>HAPAG-LLOYD AG, OVERSEAS CONTAINER LINE, LTD., and UNITED STATES MARITIME ALLIANCE, LTD.,<br><br>*Defendants*. | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION**<br>**ESSEX COUNTY**<br><br>**DOCKET NO. ESX-L003231-21**<br><br>**FIRST AMENDED**<br>**COMPLAINT AND JURY DEMAND** |

Plaintiff International Longshoremen's Association, 5000 West Side Avenue, North Bergen, Hudson County, New Jersey by and through its undersigned attorneys, Marrinan & Mazzola Mardon, P.C., and Critchley, Kinum & Luria, LLC, by and for its First Amended Complaint, respectfully alleges as follows:

### PARTIES

1. Plaintiff International Longshoremen's Association ("ILA" or "Plaintiff") is an unincorporated association and an international labor union, with its principal office located at 5000

West Side Avenue, North Bergen, Hudson County, New Jersey.  The ILA represents longshore workers and related crafts in ports on the Atlantic and Gulf Coasts of the United States, including the Ports of Newark, Elizabeth, and Bayonne in New Jersey.  The ILA, on behalf of its constituent locals, negotiates and administers with Defendant United States Maritime Alliance, Ltd., ("USMX") on behalf of its employer-members, a collective bargaining agreement known as the "Master Contract," which prescribes the key terms and conditions of employment for longshore workers employed in container and ro/ro operations in ports on the Atlantic and Gulf Coasts of the United States, including the Ports of Newark, Elizabeth, and Bayonne in New Jersey.  The ILA is a "labor organization" within the meaning of Section 2(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 152(5).

    2.    Defendant Hapag-Lloyd AG ("Hapag-Lloyd") is a company organized and existing under and by virtue of the laws of Germany.   Hapag-Lloyd is represented in the United States by Hapag- Lloyd (America), Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 399 Hoes Lane, Piscataway, County of Middlesex, New Jersey 08854.  Hapag-Lloyd is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including ports on the Atlantic and Gulf coasts of the United States where marine terminals are staffed by members of the ILA, including Newark, Elizabeth, and Bayonne in New Jersey.  Hapag-Lloyd is a member of USMX and is bound by the Master Contract negotiated by USMX with the ILA.  Hapag-Lloyd is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

    3.    Defendant Orient Overseas Container Line Limited (OOCL) is a company organized and existing under and by virtue of the laws of Hong Kong. OOCL is represented in the

United States by OOCL (USA) Inc., which is a corporation organized and existing under and by virtue of the laws of the State of New York and has its principal place of business at 10913 South River Front Parkway, Suite 200, South Jordan, UT 84095-5641. OOCL is engaged in the business of transporting cargo by sea in international trade and commerce. Its ships call at ports in the United States, including ports on the Atlantic and Gulf coasts of the United States where marine terminals are staffed by members of the ILA, including Newark, Elizabeth, and Bayonne in New Jersey. OOCL is a member of USMX and is bound by the Master Contract negotiated by USMX with the ILA. OOCL is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

   4. Defendant USMX is a non-profit membership corporation organized and existing under and by virtue of the laws of the State of Delaware with its principal office located at 125 Chubb Avenue, Suite 350NC, Lyndhurst, Bergen County, New Jersey 07071. USMX is a multiemployer collective-bargaining representative for its members, which consist of shipping companies or lines (also known as carriers), marine terminal operators and stevedoring companies, and port associations that represent employers of longshore labor engaged in container and roll on/roll off (ro/ro) operations in ports on the East and Gulf Coasts of the United States, including on marine terminals in Newark, Elizabeth, and Bayonne, in New Jersey. USMX on behalf of its members negotiates and administers with the ILA on behalf of its constituent locals of the Master Contract. USMX is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

## FACTUAL BACKGROUND

   5. Article 1, Section 3 of the Master Contract states as follows:

> This Master Contract is a full and complete agreement on all Master Contract issues relating to the employment of longshore employees

1003-555
116159

3

on container and ro-ro vessels and container and ro-ro terminals in all ports from Maine to Texas at which ships of USMX carriers and carriers that are subscribers to this Master Contract may call.

6. The Master Contract contains provisions that describe and define the work jurisdiction of a multiemployer, multiport, coastwise bargaining unit (the Master Contract bargaining unit). These provisions grant to the bargaining unit jurisdiction over all work that employees covered by the Master Contract have historically performed on a multiemployer, multiport and coastwise basis.

7. Specifically, the Master Contract specifies that employees covered by it have jurisdiction over longshore, checker, maintenance, and other craft work conferred on such workers by the "Containerization Agreement," a copy of which is appended to this Master Contract as "Appendix A."

8. The Containerization Agreement defines the work jurisdiction of USMX-ILA employees and prohibits the subcontracting out of any of the work covered under the agreement.

9. Section 1 of the Containerization Agreement affirms the multiemployer, multiport, coastwise jurisdiction over all container and ro/ro work traditionally performed on a coastwise basis. The Section provides that:

> Management and the Carriers recognize the existing work jurisdiction of ILA employees covered by their agreements with the ILA over all container work which historically has been performed by longshoremen and all other ILA crafts at container waterfront facilities. Carriers, direct employers and their agents covered by such agreements agree to employ employees covered by their agreements to perform such work which includes, but which is not limited to:
>
> (a) the loading and discharging of containers on and off ships
>
> (b) the receipt of cargo
>
> (c) the delivery of cargo

1003-555
116159

4

(d) the loading and discharging of cargo into and out of containers

(e) the maintenance and repair of containers

(f) the inspection of containers at waterfront facilities (TIR men).

10. Section 2 of the "Containerization Agreement" provides: "Management, the Carriers, the direct employers and their agents shall not contract out any work covered by this agreement. Any violations of this provision shall be considered a breach of this agreement."

11. Under Section 4 of the "Containerization Agreement," the ILA has the right to seek money damages for violations of the Agreement. The Section provides: "It is understood that the provisions of this Agreement are to be rigidly enforced in order to protect against the further reduction of the work force. Management believes that there may have been violation of work jurisdiction, of subcontracting clauses, and of this Agreement, by steamship carriers and direct employers. The parties agree that the enforcement of these provisions is especially important and that any violation of such other provisions is of the essence of the Agreement. The Union shall have the right to insist that any such violations be remedied by money damages to compensate employees who have lost their work. Because of the difficulty of proving specific damages in such cases, it is agreed that, in place of any other damages, liquidated damages of $1,000.00 for each violation shall be paid to the appropriate Welfare and Pension Funds. Liquidated damages shall be imposed by the Emergency Hearing Panel described below."

12. The Containerization Agreement was entered into in order to preserve work traditionally performed by ILA employees on a coastwise basis, including the work currently performed by ILA members at marine terminals in Newark, Elizabeth, and Bayonne, New Jersey. Due to the loss of work threatened by containerization, this agreement was an effort by the parties to preserve work that would have been lost due to containerization.

13. The Containerization Agreement requires Hapag-Lloyd, OOCL, and other signatory carriers to use longshore employees covered by the Master Contract to load and discharge containers on and off all container ships, and perform all other container work for signatory carriers, at any marine terminal at which signatory carrier ships call on the Atlantic and Gulf Coasts of the United States.

14. Hapag-Lloyd, OOCL, and any other carriers bound by the Master Contract are free at any time to change which marine terminal that they bring their cargo to, so long as when a shipping carrier relocates its operations to another marine terminal on the Atlantic or Gulf Coasts of the United States it must go to a terminal that uses employees covered by the Master Contract to stevedore its vessels and perform container work related thereto.

15. Hapag-Lloyd and OOCL and other signatory carriers are on notice of their contractual obligations which were negotiated by their representative USMX.

16. On or around March 30, 2021, the South Carolina Ports Authority opened a new container handling facility, known as the Hugh K. Leatherman Terminal ("Leatherman Terminal"), at Juneau Avenue, in North Charleston, South Carolina.

17. Because this terminal is new, it is not one of the terminals recognized by the Master Contract as one of the container and ro-ro terminals "in all ports from Maine to Texas at which ships of USMX carriers and carriers that are subscribers to this Master Contract may call."

18. The Leatherman Terminal has been under construction for years, and at various times during the past twenty-four months, the ILA has reached out to USMX for assurances that the terminal would be one where all container and ro/ro work that has been historically performed by the multiemployer, multiport coastwise Master Contract bargaining unit would continue to be

performed by that bargaining unit consistent with the work jurisdiction provisions of the Master Contract.

19.     USMX failed and refused to give the requested assurances to the ILA.

20.     On the contrary, the information that the ILA received was that the Leatherman Terminal would hire workers who were not part of the Master Contract bargaining unit employed in various positions unloading containers from ships and handling containers in the marine terminal, instead of longshore workers in the multiemployer, multiport, coastwise Master Contract bargaining unit.

21.     Defendants were on notice that the Leatherman Terminal employed workers who were not in the Master Contract bargaining unit to unload containers from ships and handle containers in the marine terminal

22.     On or about April 9, 2021, a ship owned by Hapag-Lloyd docked at Leatherman Terminal to deliver cargo.  Workers who were not in the Master Contract bargaining unit were hired at Leatherman Terminal to perform various crane and terminal work unloading containers off this ship.  For example, workers who were not in the Master Contract bargaining unit performed crane work, used forklifts, and moved containers onto chassis.

23.     On or about April 24, 2021, a ship owned by OOCL docked at Leatherman Terminal to deliver cargo.  Workers who were not in the Master Contract bargaining unit were hired at Leatherman Terminal to perform various crane and terminal work unloading containers off this ship.  For example, workers who were not in the Master Contract bargaining unit performed crane work, used forklifts, and moved containers onto chassis.

24. The Hapag-Lloyd and OOCL ships intentionally went to Leatherman Terminal even though they knew that workers who were not in the Master Contract bargaining unit would be hired to unload containers and to handle containers on the terminal.

25. Upon information and belief, USMX was aware that Hapag-Lloyd and OOCL intended to bring their ships to Leatherman Terminal in April 2021. Upon information and belief, USMX did not do anything to dissuade any signatory carriers from utilizing the non-bargaining unit labor and, indeed, may have encouraged them to do so.

26. Defendants were well aware that the work in question would have been handled by members of the multiemployer, multiport, coastwise bargaining unit who are covered by the Master Contract if the ship had gone to other marine terminals on the East and Gulf Coasts of the United States, including all the marine terminals in New Jersey.

27. Signatory shipping carriers have discretion as to which marine terminal they will bring ocean-borne cargo.

28. Upon information and belief, Defendants' recent action presages future diversion of discretionary cargo from the Master Contract bargaining unit to workers outside the Master Contract bargaining unit specifically to avoid the cost of paying Master Contract wages and benefits.

29. In addition, as a result of the signatory carriers' decision to call their ships to Leatherman Terminal where employees from outside the Master Contract bargaining unit performed the work within the jurisdiction of the multiemployer, multiport, coastwise Master Contract bargaining unit, the ILA suffered massive damages. ILA members lost out on work opportunities, suffering lost wages and lost benefits, thereby also depriving the ILA of dues income.

30. In addition, these employees lost out on future wages and benefits because of the precedent set for using non-bargaining unit workers at the Leatherman Terminal and at other non-contract marine terminals on the East and Gulf Coasts.

31. Because Defendants' conduct was willful and malicious, they are also liable for punitive damages.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACT

32. Plaintiff hereby restates and realleges all of the paragraphs 1 through 29 above as if fully set forth here.

33. The Master Contract creates a protected interest for the ILA and its members in that it protects work jurisdiction whereby ILA members are able to earn wages and benefits for themselves and their families. The ILA then is able to collect a portion of its members' wages as union dues.

34. Defendants intentionally and maliciously interfered without justification with the ILA's protected interest by interfering with the work jurisdiction of the Master Contract bargaining unit, when the signatory carriers elected to bring their container vessels to the Leatherman Terminal in April 2021, as workers not covered by the Master Contract were hired to perform crane and terminal work unloading containers and handling containers from container ships, which work historically has been performed by members of the Master Contract bargaining unit on a multiemployer, multiport, coastwise basis..

35. Defendants' interference has caused the ILA and its members harm by depriving the ILA of dues and violating the Master Contract bargaining unit's work jurisdiction.

36. The ILA has suffered massive damages as a result of Defendants' interference, and will continue to suffer damages.

## COUNT II

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

37. Plaintiff hereby restates and realleges all of the paragraphs 1 through 34 above as if fully set forth here.

38. Defendants' conduct intentionally and maliciously interfered without justification with the ILA's future ability to enter into collective bargaining agreements on behalf of its members, preserve jobs for its members in accordance with the work jurisdiction provisions of the Master Contract, and to enforce the work jurisdiction provisions of the Master Contract.

39. Defendants' interference caused the loss of a prospective gain for Plaintiff.

40. Plaintiff has suffered actual damages resulting from Defendants' interference, including but not limited to depriving ILA of future dues income.

## COUNT III

### CIVIL CONSPIRACY

41. Plaintiff hereby restates and realleges all of the paragraphs 1 through 38 above as if fully set forth here.

42. Defendant USMX acted in concert with the defendant shipping carriers in order to violate the work jurisdictions of the Master Contract and to interfere with the work jurisdiction of the Master Contract bargaining unit.

43. Defendants understood the general objectives of their conspiracy, accepted them, and explicitly agreed to do their part to further them.

44. This included when the defendant shipping carriers with the consent of USMX, elected to bring their container vessels to the Leatherman Terminal, knowing that workers not covered by the Master Contract would be, and were, hired to perform crane and terminal work unloading containers and handling containers from the ships, which work historically has been performed by members of the Master Contract bargaining unit on a multiemployer, multiport, coastwise basis.

45. As a result of Defendants' actions, the ILA was harmed and sustained damages.

## COUNT IV

## BREACH OF THE MASTER CONTRACT

46. Plaintiff hereby restates and realleges all of the paragraphs 1 through 43 above as if fully set forth here.

47. Section 301(a) of the LMRA allows labor organizations representing employees in an industry affecting commerce to sue for violations of a collective bargaining agreement with an employer.  29 U.S.C. §185 (a).

48. Pursuant to the terms of the Containerization Agreement in the Master Contract, Defendants are contractually obligated to use employees covered by the Master Contract to perform the container work which historically has been performed by longshoremen and all other ILA crafts at container waterfront facilities.

49. Defendants willfully violated the work jurisdiction provisions of the Master Contract, when the defendant shipping carriers elected to bring their container vessels to the Leatherman Terminal, as workers not covered by the Master Contract were hired to perform crane and terminal work unloading containers and handling containers which historically has been

performed by members of the Master Contract bargaining unit on a multiemployer, multiport, coastwise basis..

50. As a result of Defendants' breach of the Master Contract, Defendants breached the Master Contract.

51. The ILA suffered massive damages as a result of Defendants' breach.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants in the form of an Order:

(a) Holding Defendants individually and jointly and severally liable for tortious interference with compensatory, incidental, consequential, liquidated, and punitive damages; in the total amount of $300,000,000;

(b) granting Plaintiff attorney's fees, interests, and costs of suit;

(c) granting Plaintiff punitive damages; and

(d) for such further relief as the Court may deem equitable and just.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

## CERTIFICATION OF NO OTHER PENDING ACTION OR ARBITRATION

Pursuant to *R*.4:5-l, we hereby certify that the matter in controversy is not the subject of any other pending or contemplated action or arbitration proceeding. These parties are not aware of any other parties who should be joined in this action at this time.

Dated: April 26, 2021

Respectfully submitted,

/s/ John P. Sheridan

1003-555
116159

        John P. Sheridan, Attorney ID 028891998
        MARRINAN & MAZZOLA MARDON, P.C.
        26 Broadway, 17th Floor
        New York, NY 10004
        Tel: (212) 425-3240
        jsheridan@mmmpc.com

        *Attorneys for Plaintiff*


        /s/ Michael Critchley
        Michael Critchley, Attorney ID 251821972
        CRITCHLEY, KINUM & LURIA, LLC
        75 Livingston Avenue
        Roseland, New Jersey 07068
        Tel: (973) 422-9200
        mcritchley@critchleylaw.com

        *Attorneys for Plaintiff*

1003-555
116159